**STATE OF FLORIDA, ex rel., N. VERNON HAWTHORNE, v. MARSHALL C. WISEHEART.**

28 So. (2nd) 589

October 8, 1946

Rehearing denied Nov. 26, 1946

June Term, 1946

En Banc

268

*Murrell, Fleming & Flowers, Thomas H. Anderson* and *J. Lewis Hall,* for petitioner.

*M. L. Mershon, W. G. Ward, J. P. Marchant, James Messer, Jr.* and *Robert H. Anderson,* for respondent.

TERRELL, J.:

On June 24, 1946, the Governor appointed N. Vernon Hawthorne to the office of Circuit Judge, Eleventh Judicial Circuit of Florida, the position at the time held by Marshall C. Wiseheart, under an appointment and commission dated June 4, 1943. Hawthorne promptly filed information in quo warranto challenging the title of Wiseheart to the office. A demurrer to Wiseheart's return to the information raises the sole question presented: the validity of Wiseheart's title to the office drawn in question.

The facts out of which the answer to this question must be deduced are these: Wiseheart was duly elected, and qualified, and served as a member of the House of Representatives, Legislature of 1943, the time for which he was elected being from the general election in 1942 to the general election in 1944. On June 4, 1943, he resigned as a member of the House of Representatives and was appointed and commissioned Judge of the Eleventh Judicial Circuit of Florida for the term ending the first Tuesday after the first Monday in January, 1949. The appointment was to fill out the unexpired term of the Honorable Worth W. Trammel, resigned.

The Legislature of 1943 enacted Chapter 21760, the pertinent part of which is as follows:

"Section 1. That beginning July 1, 1943, the annual salaries of the Judges of the Circuit Court of the State of Florida shall be $6,000.00, which salaries shall be paid by equal monthly installments by warrants drawn by the State Comptroller upon requisition made for same.

"Section 2. Any member of the Legislature who may during the time for which he was elected Senator or Member of the House of Representatives, be appointed or elected to a civil officer referred to in Section 5, Article III of the Constitution shall receive during the term for which he was elected or appointed to such civil office the salary or emoluments which under the provisions of law appertain to such office at the beginning of the time for which he was elected Senator or Member of the House of Representatives."

The Legislature of 1943 also enacted Chapter 22153, the effect of which was to amend Chapter 17772, Acts of 1937, by

authorizing counties with a population of 260,000 or more to pay their Circuit Judges an additional compensation of ten per cent of the compensation paid them by the state. The latter act contains a provision similar to that here quoted from Section 2 of Chapter 21760 barring Senators and Representatives from participating in its provisions during the time for which they were elected, should they be appointed or elected to any civil office.

Hawthorne contends that both these acts are in direct conflict with Section 5, Article III of the Constitution, and, being so, Wiseheart's appointment was devoid of legal sanction, that he usurps the office of Circuit Judge, and that his appointment was void ab initio. Section 5, Article III, is as follows:

"No Senator or Member of the House of Representatives shall during the time for which he was elected, be appointed, or elected to any civil office under the constitution of this state that has been created, or the emoluments whereof shall have been increased during such time."

The latest interpretation of this provision of the Constitution was in advisory opinion to the Governor. Reported in 155 Fla. 55, 22 So. (2nd) 458, wherein we held that no member of the Legislature of 1945 was eligible to appointment to the office of additional Circuit Judge of the Sixth Circuit created at that Session. Other holdings are to the effect: (1) that "during the term for which he was elected" means the term fixed by the Constitution. Advisory Opinion to the Governor, 94 Fla. 620, 113 So. 913. (2) Ineligibility continues during the time for which the member of the Legislature was elected, and he cannot render himself eligible by resigning. Advisory Opinion to the Governor, 45 Fla. 269, 39 So. 63. (3) A Senator elected in 1924 is eligible to be elected Governor in the 1928 General Election, even though the emoluments were increased during his incumbency as Senator. Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41. (4) State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248, is enlightening on other phases of this question.

The net result of these holdings is that no member of the Legislature is eligible to appointment as Circuit Judge or to any civil office that was created or the emoluments thereof

were increased during the time for which he was elected. If he is a member of the House of Representatives, the time for which he is elected runs to the succeeding general election after the one at which he was elected. If he is a Senator, the time for which he is elected runs to the general election four years from the one at which he was elected. He cannot better his position by resigning his membership in the Legislature, but he is eligible to appointment or election to any civil office immediately following the general election at which his term in the Legislature expires. We are also of the view that a statute raising the compensation of Circuit Judges, as did Chapter 21760 or Chapter 22153, with provision withholding such compensation from members of the Legislature during the time they were elected thereto, does not render them eligible for appointment as Circuit Judge.

The purpose of Section 5, Article III of the Constitution, was to remove the temptation on the part of the Legislature or any of its members to "featherbed" on the public domain during the period of their election, by raising the salary of or creating public offices and getting themselves appointed thereto. Any device to circumvent this provision of the Constitution should be stricken down. We are of the view, however that any question of a Legislator's ineligibility to hold office because of Section 5, Article III, must be raised during the time the Constitution prohibits his appointment or election.

Many considerations support this view. Section 5, Article III, does not state a disqualification for office; it only prohibits election or appointment to another office during the period for which one is elected to the Legislature. When that period expires, the prohibition expires with it, and the member of the Legislature is eligible to election or appointment to any civil office. No penalty is imposed for violation of the prohibition, so in determining whether or not its terms have been violated this Court is burdened with no punic consideration because there is no authority to punish. Whether Hawthorne or Wiseheart holds the office of Circuit Judge in Dade County is not the material consideration. The matter with which we are concerned is whether or not Section 5, Article III of the Con-

stitution, is being violated and the mandate of the people, as contained therein, transgressd.

. A legal disqualification to hold office continues indefinitely, unless removed by the Legislature or some authority commissioned to remove it. This is not the rule when a legal prohibition interdicts the holding of an office for a special time. If Wiseheart's title to the office of Circuit Judge had been challenged during the period he was elected to the Legislature, he would no doubt have been declared ineligible and ousted, but that period expired in November, 1944, nearly two years ago. We think, by the very terms of the Constitutional prohibition, it should be construed like a statute of limitations or a statute of repose, and, since the limitation has long since run and there is no other charge or disqualification, Wiseheart's eligibility cannot now be drawn in question.

Section 15, Article IV of the Constitution, authorizes the Governor to suspend all officers not subject to impeachment for malfeasance, misfeasance, or neglect of duty in office, for the commission of a felony, or for drunkenness or incompetency. The Governor cannot, however, reach back and suspend an officer for an offense committed prior to his current term. If the power of suspension and removal is limited to the current term, then certainly the prohibition against appointment to office for a period specified in the Constitution should not be permitted to be raised more than a year and a half after it is dead. A statute of limitations would be so construed, and there is no difference in the rules governing statutory and constitutional construction.

Hawthorne contends that Wiseheart's appointment was void ab initio, though he says all orders, decrees, and other proceedings in which he participated are valid. We fail to follow this logic. The facts are that Wiseheart's appointment was, on its face, regular, it was regularly confirmed by the Senate, he qualified as the law requires, and he has faithfully performed the duties of the office to this date, or for more than three years, the major portion of which transpired after the expiration of the time he was elected to the Legislature when there was no question of his eligibility. The Governor and the Senate may not be too severely criticized

for their action, since the same thing had been done before and no question was raised to its validity.

Much is said in the briefs about Wiseheart's having been appointed, confirmed by the Senate, qualified, and having assumed his duties as Circuit Judge before the effective date of the Act increasing the emoluments of the office. These facts and the fact that he was appointed to an office previously created are admitted. It is also shown that the salary increase act is the basis of the claim of disqualification and that it became a law without the Governor's approval some days after Wiseheart's appointment. These recitations are mere trivia that do not go to the merits or the controversy. In our judgment, Wiseheart was a de facto officer from the day of his appointment. He was in peaceful position, discharging his official duties in view of the public, with public acquiescence, and without the slightest appearance of a usurper. See Vol. 43, p. 225, Sec. 471, Am. Jur., for the best discussion we have found of what constitutes a de facto officer. It is too well settled for comment that Section 5, Article III, should be strictly construed in favor of the officer whose title is assaulted. Wallace v. Grubb, 154 Tenn. 655, 289 S.W. 530; Gregg v. Dudley, 143 Okla. 281, 289 Jac. 254.

It is hardly necessary to say that the de facto doctrine was engrafted on the law for public policy and necessity, in order that the interest of the public and others dealing with the officer might be protected. It has been frequently held that it would be unreasonable to require those dealing with any officer to inquire into his title; hence, Wiseheart's official acts were as valid as if he had been an officer de jure and no question had been raised as to them. Sawyer v. State, 94 Fla. 60, 113 So. 736; Martin v. Grandview Independent School District, (Tex. Civ. App.), 266 S.W. 607; Powers v. Commonwealth, 110 Ky. 386, 61 S.W. 735, 63 S.W. 976; State v. Carroll, 38 Conn. 449. After the November, 1944, election, every impediment to Wiseheart's title under the Constitution was removed, he was fully qualified to hold the office, and we are shown no valid reason why he should be ousted. This Court has approved the doctrine that quo warranto is discretionary. City of Winter Haven v. State ex rel. Landis, 125

Fla. 392, 170 So. 100. We find no valid reason whatever to support an affirmative judgment on the information in this case. The public will in no sense be protected or benefitted by it; Wiseheart is shown to be fully qualified and has, in fact, performed the duties of the office for almost two years without question after the time expired in which his title was subject to assault.

Another reason this Court should exercise its discretion to deny affirmative relief is that there was and is yet no vacancy in the office, and there must be a vacancy before an appointment can be made. Even if Wiseheart is now nothing more than a de facto officer, he is holding and exercising the functions of the office, and the only way a vacancy could be created is by direct proceedings to oust him. There is no taint attached to the fact of being a de facto officer. The difference between the authority of a de facto officer and that of a de jure officer is that one rests on right and the other rests on reputation. Ridout v. State, 161 Tenn. 248, 30 S.W. (2nd) 255. A de jure officer, in other words, has the lawful title without possession, while the de facto officer has possession and performs the duties under color of title without being technically qualified to act. As we have previously stated, Wiseheart's technical disqualification was relieved long before the assault was made on his title, and whether his status at the present is that of a de facto or a de jure officer is not material to this suit.

Section 114.01, Florida Statutes 1941, defines the conditions under which an office becomes vacant. The Governor may declare a vacancy under certain conditions named in Section 114.01, or he may create a vacancy by removal, as in Section 15, Article IV of the Constitution, but not otherwise. It is certain that he cannot appoint to fill a vacancy until a vacancy in law actually exists. It takes the joint action of the Governor and the Senate to remove officers not subject to impeachment or to fill a Circuit Judgeship. State ex rel. Landis v. Bird, supra. If, for any reason, it could be said that there was a vacancy at any time, it existed long before the 1945 Session of the Senate, and it was the constitutional duty of the Governor to send the name of an appointee to the

Session of the Senate. Since it takes joint action of the Governor and the Senate to consummate title to office, Hawthorne is not in position to maintain this suit until his appointment is confirmed by the Senate. Under the doctrine of State ex rel. Landis v. Bird, supra, there is no inherent power in the executive to fill a vacancy in office. His power to do so much be expressly provided by the Constitution and conferred by law.

To contend that Wiseheart's appointment was void ab initio and then declare in the same breath that all his orders, decrees, and official acts are valid does not square with reason. If his appointment was void, it was null and without binding effect, and nothing binding could flow from it; neither could it be cured. It is quite true that the term "void," when used in statutes and decisions, does not always impart positive nullity, but, when this is the case, the act, order, or instrument is often classified as "voidable" rather than "void," the distinction being that, if void, it may be assailed in any proceeding, but, if voidable, it must be assailed by direct proceeding. So it would be perfectly consistent with reason to hold that Wiseheart's appointment was voidable, that he was a de facto officer during the period he was elected to the Legislature, and that his official acts were binding.

It is accordingly our view that Section 5, Article III of the constitution, is a prohibition against appointing a member of the Legislature to any civil office during the time for which he was elected and that the title to any such appointment may be held invalid by quo warranto if moved against during that period. The Constitution does not void the appointment or the acts of the appointee, and we find no authority for this Court to question the title after the period for which he was elected to the Legislature expires, he being in all other respects qualified. Under the rule of strict construction in favor of the officer whose title is assaulted, no other conclusion is permissible. To hold otherwise under the facts related would amount to nothing more than "swapping horses," and quo warranto cannot be used for that purpose.

It follows that the demurrer to the return must be and is hereby overruled and the return is held to be sufficient.

It is so ordered.

CHAPMAN, C. J., BROWN and ADAMS, JJ., concur.

ADAMS, J., concurring:

May a defacto official become a de jure official? I think yes and concur in the opinion of Mr. Justice TERRELL.

BUFORD, THOMAS and SEBRING, JJ., dissent.

BUFORD, J., dissenting:

The record in this case shows that on and prior to the 3rd day of June, 1943, there was a vacancy in the office of additional circuit Judge in and for the Eleventh Judicial Circuit of Florida by reason of the resignation of Hon. Worth W. Trammell; that on the 3rd day of June, 1943, the Legislature was in regular session at Tallahassee, Florida and on that day the then Governor of Florida presented the name of Marshal C. Wiseheart to be approved by the Senate to be appointed Circuit Judge to fill such vacancy and the said Senate on the said date confirmed said appointment; that on the 4th day of June, 1943, Marshall C. Wiseheart, being then a member of the House of Representatives of the Florida Legislature, resigned his office of Representative from Dade County and thereupon a commission was issued to him as' Circuit Judge to succeed the Honorable Worth W. Trammell, resigned.

On the 3rd day of June, 1943, while the said Marshall C. Wiseheart was a member of the Legislature of Florida, the Legislature enacted chapter 22,153, Laws of Florida, which is as follows:

"Chapter 22,153.— (No. 519) House Bill No. 1030. An Act Providing for Supplementary Compensation to Circuit Judges in Counties having a population of 260,000 or more inhabitants to be paid by the County and making same a County purpose.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF FLORIDA:

"SECTION I. Each Circuit Judge, a citizen and resident of a County having a population of 260,000 or more inhabitants according to the latest Federal Census shall be paid annually in equal monthly installments by such County, an

additional supplementary compensation equal to 10 per centum of such annual compensation paid him by the State and same is hereby made a county purpose; nothing herein contained shall in any wise be given consideration in calculating the emoluments of the office provided by any other law. Nothing herein shall operate to increase the salary or emolument of any Circuit Judge who shall be appointed to office during the time for which he was elected Senator or Member of the House of Representatives, and each such Circuit Judge shall receive, during the term for which he shall be appointed, the salary and emoluments, which under the provisions of law, appertain to such office at the beginning of the time for which he was elected Senator or Member of the House of Representatives as aforesaid.

"SECTION 2. Nothing herein contained shall be taken or construed to repeal any law or laws and same is intended to be cumulative in effect and shall be so construed.

"SECTION 3. This Act shall take effect upon becoming a law."

"(Became a law without the Governor's Approval. Filed in Office Secretary of State June 14, 1943.)"

It will be observed that Section 1 of this Act increased the emoluments of the Circuit Judges of Dade County in the sum of 10% of the annual compensation paid him by the State. Section 2 of this Act attempted to make any then Member of the Legislature otherwise qualified eligible for appointment of Circuit Judge by providing that the amendment increasing the emoluments should not apply to a Circuit Judge who should be appointed to office during the term for which he was elected Senator or Member of the House of Representatives.

Section 5 of Article III of the Constitution provides:

"No Senator or Member of the House of Representatives shall during the time for which he was elected, be appointed or elected to any civil office under the Constitution of this State that has been created, or the emoluments whereof shall have been increased during such time."

Section 43 of Article V of our Constitution provides:

"Section 43.—Legislature May Provide for Additional Circuit Judges.—The Legislature may from time to time and as the business of any Circuit requires, provide for the appointment of one or more additional Circuit Judges for such Circuit. Each such additional Circuit Judge shall be appointed by the Governor and confirmed by the Senate, and hold office for Six years, and shall receive the same salary and allowances for expenses as other Circuit Judges."

Paragraph C of Sec. 45 of Article V of our Constitution is as follows:

"There shall be one Circuit Judge to each Judicial Circuit but additional Circuit Judges for Judicial Circuit may be provided for by law as authorized by Section 43 of Amended Article V of this Constitution, but the total number of Circuit Judges apportioned to any one judicial circuit shall not exceed one circuit judge for every fifty thousand inhabitants, or major fraction thereof, after this amendment shall have been put into effect."

On June 24, 1946, while Marshall C. Wiseheart was continuing to exercise the functions of Circuit Judge under the appointment made as aforesaid, the Honorable Millard F. Caldwell as Governor of Florida appointed N. Vernon Hawthorne as Circuit Judge to fill the office which had theretofore been occupied by Marshall C. Wiseheart and on July 1, 1946, a commission was issued to N. Vernon Hawthorne for the unexpired term of such Judgeship ending on the first Tuesday after the first Monday in January, 1949.

Section 46 of Article V of our Constitution was adopted at the general election in 1942 and is as follows:

"Section 46. Circuit Judges, Election, Terms, etc.— Circuit Judges shall hereafter be elected by the qualified electors of their respective judicial circuits as other State and County Officials are elected.

"The first election of Circuit Judges shall be held at the General Election in 1948 to take office on the first Tuesday after the first Monday in January, 1949, for a term of 6 years.

"The terms of all such offices as they shall severally exist at the time of adoption of this Amendment shall be and they

are hereby extended to terminate on the first Tuesday after the first Monday in January, 1949."

On July 5, 1946, N. Vernon Hawthorne filed his information in quo warranto in this Court claiming the office of Circuit Judge and praying the ouster of Marshall C. Wiseheart. Mr. Hawthorne showed that he had requested the Attorney General to bring this proceeding and that the Attorney General had declined to do so and therefore, Mr. Hawthorne proceeded to file the information in his own name under the statute, Sec. 80.01 Fla. Statutes 1941 (same F.S.A.).

Rule to show cause was issued to the Respondent, Marshall C. Wiseheart, and to this he filed return to which the Relators filed demurrer and also prayed judgment of ouster, notwithstanding the return. The return shows the enactment of Chapter 22,153, supra, as heretofore stated, and Respondent contends that because that Act does not contain what is known as a saving clause and does contain the second paragraph, that if the second paragraph is void then the whole Act is void and the emoluments of the office of a Circuit Judge in Dade County were not increased while he was serving as a member of the Legislature and also alleged that he has not claimed, had or taken any of the increased emoluments provided by that Act.

The return further contends that, as the Act did not take effect until after he was appointed Judge, the provisions of Section 5, Article III, supra, are not applicable here. It further contends that even if he was ineligible for the appointment that the ineligibility expired with the expiration of the term of office for which he was elected a member of the Legislature, to-wit at the general Election in 1944. It also contends that the appointment of Hawthorne was null and void because no vacancy existed at the time of the appointment.

There is no question but that Worth W. Trammell was a duly appointed and qualified additional Judge for the Eleventh Judicial Circuit of Florida. When he resigned a vacancy occurred and that vacancy continued insofar as a de jure Judge was concerned until the vacancy was filled by a lawful appointment. It, therefore, follows that if Marshall C. Wise-

heart was not eligible for the appointment and the Governor was not authorized to appoint him to the office at the time he was appointed, then the vacancy was not lawfully filled and continued to exist.

The fact as to whether or not a vacancy exists may be determined primarily by the Governor. Of course, his finding in this regard may be challenged in proper proceedings in courts of competent jurisdiction. State ex rel. Landis v. Byrd, 120 Fla. 780, 163 So. 248; State ex rel. Wimberly v. Barham et al., 173 La. 488, 137 So. 862; Independent School District of Manning, Carroll County v. Miller, et al., 189 Iowa 123, 178 N.W. 323; State ex rel. Leal v. Jones, 19 Ind. 356, 81 Am. Dec. 403; Shelby v. Alcorn, 36 Miss. 273, 72 Am. Dec. 169; State ex rel. Roberts v. Murphy, 32 Fla. 138, 13 So. 705.

We see no escape from the conclusion that the second paragraph of Chapter 22153, supra, is in direct conflict with Section 43 of Article V of the Constitution and, therefore, that paragraph of the Act was of no force or effect. So the Act, without this paragraph, provided for an increase in the emoluments of the Circuit Judges of the Eleventh Judicial Circuit of Florida.

We come then to the question as to whether or not this paragraph may be stricken and the balance of the Act left standing as a valid and complete Act.

It has been generally held and is certainly the rule in this jurisdiction that if there are unconstitutional provisions of a statute and such unconstitutional provisions can be separated from the valid portions and the legislative purpose expressed, in so much of the Act as is good, can be accomplished independently of the void part, and considering the entire Act, the good and bad features are not so essentially and inseparably connected in substance or so inter-dependent that it cannot be said that the Legislature would not have passed the one without enacting the other, it is the duty of the Court to give effect to so much as is good. State v. Bryan, 50 Fla. 293, 39 So. 929; State v. Philips, 70 Fla. 340, 70 So. 367, Ann. Chas. 1918A, 138; State v. Dillon, 32 Fla. 545, 14 So. 383, 22 L.R.A. 124; Board of Commissioners v. Savage, 63 Fla. 337, 58 So. 835; Lainhart v. Catts, 73 Fla. 735, 75 So. 47; Harper v.

Galloway, 58 Fla. 255, 51 So. 226, 26 L.R.A. (N.S.) 794, 19 Ann. Cas. 235; Di Lustro v. Penton, 106 Fla. 198, 142 So. 898; Phillips v. Bell, 84 Fla. 225, 94 So. 699. It can hardly be contended that the Legislature would not have passed the remainder of the Act without the inclusion of the second paragraph. To reach any other conclusion would be to say that the Legislature would have withheld the increase in emoluments which it conscientiously believed the Circuit Judges of the Eleventh Judicial Circuit were entitled to have unless a way could be found to make one of its members eligible for the appointment, regardless of the Act increasing the emoluments of the office.

We therefore hold that, paragraph 2, Sec. 1, of Chapter 22153, supra, is void and of no effect. We further hold that the Act without the provision contained in this paragraph is good and valid.

The next contention presented is that because Mr. Wiseheart was appointed by the Governor before the legislative Act became effective, although after it was passed by the Legislature, Section 5 of Article III does not apply to the factual condition here presented. With this contention we cannot agree although we have been cited to some authority which supports this view, though we have not been cited any case directly in point, nor have we found one. In the present instance the Legislature, both the House and the Senate, had passed the Act which became Chapter 22,153, and had done all that was required of it to be done in this regard, before Mr. Wiseheart's appointment was confirmed by the Senate.

The Journal of the House shows that the Dade County delegation in the House, including Mr. Wiseheart, introduced the bill in the House on June 1st, 1943, and that on final passage on the same date Mr. Wiseheart moved the waiver of the rule and that the bill be read a third time and placed upon its passage. On this motion being adopted, Mr. Wiseheart voted for the bill.

So, we are led to the necessary conclusion that the Legislature of which Mr. Wiseheart was a member, had by its action increased the emoluments of the office of Circuit Judge of the Eleventh Judicial Circuit of Florida.

"To hold otherwise would make a mockery of Section 5, Article III of our Constitution, which has for its purpose the preventing of unscrupulous legislators passing laws for their private benefit. If we should hold with the contention of the Respondent it would be to license a member of the Legislature to prepare and procure the passage of an Act greatly increasing the emoluments to be paid by the public to the future incumbent of an office then vacant and then, when all had been done which could be done by the Legislature in the passing of an Act, rush to the Governor's office and get him appointed to the vacancy then existing, then when his eligibility to be appointed to the office is challenged, let him be heard to say "The Constitutional inhibition does not apply to me because I got the appointment before the Act passed by the Legislature had become a public law." We do not mean to intimate that Mr. Wiseheart was prompted by such evil motives in exercising his activity in connection with the passage of the Act here under consideration. The record evidence is quite to the contrary and it is established that such was not his motive. That fact, however, does not make the appointment legal, nor lift it out of the positive inhibition of our constitution, supra. The Constitutional provision, Sec. 5, Article III, does not prohibit such an appointee assuming the duties of the office or drawing the increased emoluments, but it definitely prohibits the appointment. Therefore, the appointment could not be lawfully made, nor accepted.

This conclusion does not mean that the official acts of Mr. Wiseheart, while acting as Circuit Judge under his purported appointment and commission, have been void or that the validity of the same may now be brought into question. See 43 C.J. page 224, Sec. 470 and cases there cited; Sawyer v. State, 94 Fla. 60, 113 So. 736. In the Sawyer case, supra, we said:

"Furthermore, as bearing upon the contention that the court was without jurisdiction an account of the information having been signed, sworn to and filed by the assistant county solicitor rather than by the county solicitor himself, we are of the opinion that the principles underlying the doctrine of the validity of the acts of officers *de facto* have a pertinent appli-

cation. We are mindful of the general rule that in order for one to be an officer *de facto* there must be an office *de jure*. In the case of State ex rel. v. Gleason, 12 Fla. 190, it was held by this Court that an officer *de facto* is one exercising the duties of an office under color of 'election or appointment, and his acts are as valid and binding upon the public or upon third persons, as those of an officer *de jure*. In the opinion in that case, quoting from a Wisconsin case, it was said on page 232, 'but when it appears that the person exercising the powers of an office is in by such a color of right, and that he has such possession of the office as makes him in law an officer *de facto*, then his acts as to third persons, are valid, and his right to hold the office can only be inquired into in some direct proceeding for that purpose.' "

We take it that the law is that a de facto officer, as long as he continues to act as such, may perform all the functions which may rightfully be performed by a de jure officer, although the appointment under which he acts may never attain such validity as to bar his ouster or as to fill the legal vacancy in the office of which he, defacto, performs the duties.

The rule appears to be well settled that a defacto incumbent of office exists when he exercises the duties of the office "(1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement or conditions, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such." See 43 Am. Juris. Sec. 471 at page 225 and cases there cited. Also 43 Am. Juris. Sec. 481 at page 234; State v. Lewis 107 N.C. 967, 13 S.E. 247, 11 L.R.A. 105.

The contention that although the respondent may have been ineligible for the appointment at the time he was appointed, he became eligible for appointment from and after the General Election in 1944 and, as nothing had been done to oust him from the office during the period in which he was ineligible, his appointment automatically became valid when he became eligible and, therefore, the (in law) vacancy ceased to exist and the Governor was without power to appoint another to fill the vacancy, we think, is untenable.

The Governor had power to appoint a successor to Judge Trammell but he was precluded by Section 5 of Article III from appointing Wiseheart at the time the appointment was made and Mr. Wiseheart was, by the same provision, precluded from being appointed. So, the vacancy, in legal effect, continued to exist. The legal principles involved here are the same as were before us in the case of Tillson v. State ex rel. Landis, 127 Fla. 215, 172 So. 918, wherein we said:

"So it is that on authority of the opinions and judgments in the cases of City of Ocoee v. Beggs, et al., 102 Fla. 275, 135 So. 557, and State ex rel. Attorney General v. Phillips, 30 Fla. 579, 11 So. 922, we must hold that the allegations of the plea show that the respondent was not eligible to the office of City Commission at the time he was selected.

"The fact that prior to the institution of quo warranto proceedings the relator had registered on the registration roll of the City of Lake Helen at a time when the registration books were open in conformity with the charter provisions, cannot be held to cure his lack of eligibility at the time of his election. He claims title to the office by virtue of the election and not otherwise and if he was not eligible to election at the time the election was held he cannot lawfully hold the office under that election." ... —and also

"There might be some merit in the respondent's contention if conditions had been such that he could have qualified and had qualified to hold the office after the election, but before entering upon the duties of the office. His plea shows, however, that he was not only disqualified at the time of the election, but was disqualified at the time he assumed performance of the duties of the office and, therefore, he was not law-

fully entitled to hold the same and exercise the powers and duties thereof."

Here the respondent must rely on the validity of his appointment and confirmation at the time it was made. It is the appointment that is prohibited and the appointment that is without authority. An entirely different question would be presented if the Constitution had declared: "No Senator or member of the House of Representatives shall, during the time for which he was elected, *hold* or *exercise the duties* of any civil office under the Constitution of this State that has been created or the emoluments thereof have been increased during such time." Such provision would have applied to holding and exercising the duties of the office and the appointee would be prohibited in this regard only during the period of the term for which he had been elected as a member of the Legislature. Here, however, the appointment is prohibited and when so made can never become an effective basis for the holding of the office. See 22 R.C.L. 446 and cases there cited. Shelby v. Alcorn, supra; In re: Opinion of Attorney General, 17 Ops. Atty. Gen. (U.S.) 522.

Our opinion and judgment in Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41, is not at variance with the views herein expressed.

The contention that the Relator cannot challenge the validity of the second paragraph of Sec. 1 of Chapter 22,153, Acts of 1943, is without merit because the validity of Relator's claim to the office depends primarily upon the determination of this question. If that provision is valid, then there was no vacancy at the time Relator was appointed and there was then no power in the Governor to appoint Relator. If that provision was invalid then it caused the appointment of the Respondent to be without lawful authority and the vacancy continued to exist until it was closed by a lawful appointment and the appointment of Relator was the first lawful appointment made. We have held herein that because of the provision of the second paragraph of Section 1 of Chapter 22,153, supra, the appointment of the Respondent was contrary to Section 5 of Article III of our Constitution; that when the Respondent assumed the duties, powers and privileges of a Circuit Judge

under the appointment he discharged the same as a de facto Circuit Judge and had continued to act as such; that the office of de jure Circuit Judge remained vacant until Relator was appointed. Under the Statute, 80.01 Fla. Statutes 1941 (same F.S.A.) Relator is authorized to maintain this action.

So the return should be held insufficient and the writ of ouster should be awarded.

THOMAS, and SEBRING, JJ., concur.

ORIGINAL JURISDICTION QUO WARRANTO

PETITION FOR REHEARING

PER CURIAM:

A petition for rehearing having been filed in this cause by Counsel for Petitioner and same having been duly considered; it is ordered by the Court that said Petition be and the same is hereby denied.

CHAPMAN, C. J., TERRELL, BROWN and ADAMS, JJ., concur.

BUFORD, and THOMAS, JJ., dissent.

SEBRING, J., not participating.

BROWN, J., concurring:

In Florida jurisprudence this case is unique. We have had several cases presented to this Court involving the question of the eligibility of members of the legislature to election or appointment of civil offices under Section 5 of Article III of the Constitution, but we have never before had a case involving the same factual situation as that presented in the instant case. Upon consideration of this petition for rehearing, I have to some extent changed my views on some of the points involved, but I have not changed my conclusion that the respondent's return to the writ of quo warranto is sufficient, and that the order entered on the original hearing should be adhered to.

Undoubtedly under that Section of the Constitution no Senator or member of the House of Representatives can, during the legislative term to which he was elected, be appointed or elected to any civil office that has been created, "or the

emoluments of which *shall have been increased," during such time.*

This provision of the constitution must be given full force and effect. A like provision is contained in the Federal Constitution and in the constitutions of most of the States. Its wholesome purpose is obvious.

No decision by the Federal Supreme Court on this subject has been called to our attention, but it is a matter of history that in 1907 Congress had increased the salary of the Secretary of State, and that shortly thereafter it was announced that President-elect Taft intended to nominate Philander C. Knox, who was a Senator from Pennsylvania, to the office of Secretary of State. Congress immediately reduced the salary of that office to its former figure in order that the Senator would be eligible to the Secretaryship.

The only act of the 1943 legislature which attempted to increase the compensation of Circuit Judges residing in Dade County was Chapter 22,153, which if constitutional, granted an increase of $600.00 per year. This act did not become a law until June 15, 1943, and was repealed in 1945. There was another act passed at the same session and approved by the Governor on May 18, 1943, which raised the salaries of Circuit Judges throughout the State from $5,000.00 to $6,000.00 per year, but this act did not increase the compensation of Dade County Judges, because, under Chapter 17,772, Laws of 1937, which was then in effect, the legislature had provided that in counties having a population of 180,000 or more inhabitants the resident Circuit Judges should be entitled to receive from and be paid by each such county out of its general revenue a sum sufficient to make the salary of each Circuit Judge of such county or counties $7,500.00 per annum. Thus Chapter 21,760, Laws of 1943, did not affect the compensation of the Circuit Judges of Dade County.

So we are concerned here only with Chapter 22,153, Laws of 1943, which did grant an increase to Circuit Judges in counties having a population of 260,000 or more, such increase to be equal to 10 per cent of the annual compensation of $6,000.00 paid by the State ($600.00 per annum), to be paid by the county. This act provided that it should take effect

upon becoming a law and it did not become a law until June 14, 1943, ten days after the session of the legislature had ended, and then it became a law without the Governor's approval. This act contained a provision to the effect that it should not operate to increase the salary or emolument of any Circuit Judge who should be appointed to office during the time for which he was elected as Senator or Member of the House of Representatives, and that each such Circuit Judge should receive during the term for which he should be appointed the salary and emoluments which, under the provisions of the law, appertained to such office at the beginning of the time for which he was elected to the legislature. It is contended that this latter provision rendered the entire act unconstitutional and void, as the act did not contain any severability clause; citing Advisory Opinion to Governor, 22 So. (2nd) 458, in which the Justices of this Court said that the constitutionality of this provision was extremely doubtful. But if the inclusion of this provision in the act rendered the entire act unconstitutional, then there was no increase in compensation and Wiseheart was clearly eligible. However, we need not decide that question here. Conceding that this was a valid act, it did not become a law, as above pointed out, until June 14, 1943.

We might call attention here to the fact that this Court has held, in the case of State ex rel. Simmons v. Lee, 119 Fla. 745, 160 So. 886, that the constitutional provision, (Article V, Section 43) stating that additional Circuit Judges shall receive the same salary as other Circuit Judges, does not prevent proper classification of counties by the legislature on a population basis for the purpose of prescribing the compensation of Circuit Judges.

As to the qualifications of a person for appointment as a Justice of the Supreme Court or a Judge of the Circuit Court, such person must be twenty-five years of age and an attorney at law. It is shown that Judge Wiseheart possessed these qualifications.

At the time Wiseheart was appointed by the Governor as Circuit Judge on June 3, 1943, there was a vacancy in such Judgeship caused by the resignation of Judge Worth W.

Trammell. There was no reason why the Governor should not appoint Marshall C. Wiseheart as a Circuit Judge at that time unless Section 5 of Article III operated to prevent such appointment which appointment, by the way, was duly confirmed by the Senate on the same day and on June 4th Wiseheart resigned as a member of the legislature and received his commission in due form for such unexpired term.

Said section 5 of Article III of our Constitution as we have seen, uses the language "the emoluments whereof *shall have been increased during such time."* It clearly appears that from what has been said above that the emoluments of the office to which Wiseheart was appointed had not been increased at the time the appointment was made. The bill providing for such increase had passed both Houses of the legislature, but the legislative process had not ended on June 3, 1943, because the Governor, under the constitution, had ten days after the adjournment of the legislature in which to approve or to veto the bill, or to permit it to become a law without his approval. And so it is that on June 3, 1943, when Judge Wiseheart was appointed, and on June 4, 1943, when he was commissioned, he was eligible in every respect to hold the office of Circuit Judge. The emoluments of the office had not at that time been increased. It is true that Chapter 22,153 had been passed by both houses, but it had not become a law and at that time it might never have become a law.

And so, as I see it, when Judge Wiseheart was appointed on June 3, 1943 and confirmed by the Senate, and when his commission issued in due form and was accepted the following day, he became a *de jure* Judge, but when Chapter 22,153 (if it was a constitutional statute) went into effect on June 14, 1943, our view is that under Section 5 of Article III above quoted, Judge Wiseheart became ineligible and the Governor's appointment and commission became inoperative or ineffective until Wiseheart's ineligibility was removed by the termination of the legislative term to which he had been elected in 1942 and which ended in November 1944. During that period Judge Wiseheart was diligently performing his judicial functions, at least as a *de facto* Judge, and no one questioned the right of Judge Wiseheart to hold the office of

Circuit Judge; and when that period of ineligibility ended in November 1944, the Governor's appointment of June 3, 1943, which was confirmed by the Senate on that day, and the Governor's commission of June 4, 1943, having never been set aside or revoked, again became legally operative and effective, and Wiseheart again became a *de jure* Judge. Therefore there was no vacancy in the office when Hon. N. Vernon Hawthorne was appointed and brought this action of quo warranto.

The case of Davis, Attorney General, ex rel. Taylor v. Crawford, 95 Fla. 438. 116 So. 41, is persuasive of the correctness of our position. See also 83 A.L.R. 831.

As Judge Wiseheart became a *de jure* Judge when appointed and commissioned, and continued as such until June 14, 1943, and as he became fully eligible to hold the office after the election in 1944, and as no one challenged his right during that intervening period of time, his title to the office was, in our opinion, perfectly good after the general election in 1944 when his legislative term expired, and was therefore good at the time Hon. N. Vernon Hawthorne was appointed.

It will have been observed that section 5 of Article III of the Constitution uses the future perfect tense when it says: "or the emoluments of which shall have been increased," etc., indicating an action done and completed before an appointment is made or an election is held. See State ex rel. Ryan v. Boyd, 21 Wis. 210, construing a constitutional provision similar to our own.

An *appointment* made by the Chief Executive of the State to any civil office, when confirmed by the Senate, and *a commission* duly issued to the appointee, are documents which constitute the highest character of evidence of a complete title in the recipient to the office involved; and when any person is holding an office under such documents, the burden is upon the one who attacks his eligibility or authority to hold the office either to show that such appointment and commission was void when made, or has been rendered void by subsequent disqualification to hold the office in question, and which ineligibility still exists at the time the right of the incumbent is attacked by another and subsequent claimant.

When an office is not actually vacant or is not in law deemed vacant, there is no vacancy that can be filled by executive appointment. See State ex rel. Landis v. Bird, 120 Fla. 780, 163 So. 248. See also Simonton v. State 44 Fla. 289, 32 So. 821, and Advisory Opinion to the Governor 45 Fla. 154, 34 So. 571; Advisory Opinion to the Governor, 147 Fla. 157, (2nd) So. 378.

The question has been raised here as to whether or not, after a person has been appointed by the Governor to a civil office and his appointment confirmed by the Senate and his commission issued, his right to hold the office can be challenged by any one other than the Attorney General in his official capacity as such, but we deem it unnecessary to answer this question.

Under all the circumstances disclosed by the answer of the respondent, and in view of the law as I understand it, I think this Court was justified in overruling the demurrer to the respondent Wiseheart's return and in holding such return to be a good and sufficient answer to the relator's petition.

Our conclusion therefore is that the petition for rehearing should be denied.

CHAPMAN, C. J., concurs.

BUFORD, J., dissenting:

I think the petition for rehearing should be granted because the majority opinion appears to be based on a misconception of the prohibition contained in Section 5 of Article III of our Constitution. That section is not a prohibition against a Senator or Member of the House of Representatives being eligible during the time for which he was elected to *hold* any civil office that has been created or the emoluments whereof have been increased during such time. The prohibition is that he shall not be appointed or elected to such office during such time. The prohibition applies to the appointment and not to the eligibility of the appointee to *hold* the office. It applies with the same force and effect on the last day of the term for which he was elected as it does to the day after he takes the oath of office as a Senator or Member of the House of Representatives.

The rationale of the majority opinion is that the appointment of Mr. Wiseheart was without authority of law when made and remained so until the date of the general election in 1944; that during that time it constituted no title to the office which could have been interposed against the claim of one holding a lawful and valid appointment to fill the same; that during that time Mr. Wiseheart was merely a de facto Circuit Judge which he became when he assumed the office and proceeded without challenge to perform the functions thereof and was recognized as a Circuit Judge by the public. Regardless of all this, the holding is that when Mr. Wiseheart's term of office as a member of the House of Representatives expired with the general election of 1944, the appointment, which had up until that time been a thing without life or validity, immediately gestated into a living, vital and active authority. We think this could not be the result.

It must be recognized as settled law that the acts of de facto officers are valid and binding on the public and third person the same as those of officers de jure. State v. Gleason, 12 Fla. 190-192; Sawyer v. State, 94 Fla. 60, 113 So. 746; Dwyer v. State, 95 Fla. 846, 116 So. 726. Therefore, all the acts which Mr. Wiseheart has performed as a de jure Judge are just as valid as they would have been had he been a de jure Judge and they can never be brought into question on the ground that he was not a de jure Judge. Rushing et ux. v. Thompson's Executor, 20 Fla. 583.

So, the ouster of Mr. Wiseheart should result in no confusion.

The appointment having been contrary to the Constitution, it could never constitute a germ which in time could gestate and become and evolve as a living thing. One can acquire title to office only by lawful election or a lawful appointment. Sec. 27 Article III of Florida's Constitution. It cannot be acquired by prescription under the terms of our Constitution. It would be just as reasonable to say that Mr. Caldwell could have appointed a Circuit Judge in December, 1944, and that if such appointee took over the office and functioned therein as a de facto judge, (which such appointee could possibly have done, as no appointment or election is

prerequisite to holding an office as a de facto official,—See 43 Am. Jur. page 225, Sec. 471 and authorities there cited. Also State ex rel. v. Murphy et al., 32 Fla. 138, 13 Soy. 705; State ex rel. v. Tippett et al., 105 Fla. 1117, 134 So. 52; Sawyer v. State, 94 Fla. 60, 113 So. 736) the appointment, though being without authority of law when made, would have become good and valid and unassailable upon Mr. Caldwell's becoming Governor in January, 1945. One of these propositions is no more absurd than is the other, because Governor Holland had no more authority to appoint Mr. Wiseheart on June 3, 1943, than Mr. Caldwell would have had to appoint a Circuit Judge in December, 1944. In either event the appointment could have had no legal force or effect when made and it possessed no germ of authority which could ever give it vitality.

The case of Shelby v. Alcorn, 36 Miss. 273, 72 Am. Dec. 169, involved the same basic question which is involved in this case arising under a like constitutional provision. There the court said:

"Upon the admitted facts, the prohibition applied as well to the board of police, who held the appointing power, as to the defendant in error. It did not simply render him ineligible to the office of levee commissioner. It operated also upon the Board and incapacitated it from making the appointment. It is of the very nature and essence of the fundamental laws of a State, that it avoids every act, performed in violation of its provisions. The act of appointment was, therefore, void. It was void, for want of capacity in the appointee to accept, and for want of power in the board of police."

The present writer has found no case involving the same question holding to the contrary.

An egg sterile when it is laid will never become a chicken (regardless of how long "Old Spec" may sit on it.)

So I am convinced that a void appointment cannot by the running of time gestate and become a muniment of title to office. See Tillson v. State, 127 Fla. 215, 172 So. 918.

The appointment of Mr. Wiseheart was void for all purposes at the time it was made because it was prohibited by the Constitution and, therefore, the vacancy in the office de jure continued from the effective date of Judge Trammell's resig-

nation to the date of Mr. Hawthorne's appointment and qualification. It, therefore, follows that Mr. Wiseheart is a de facto officer while Mr. Hawthorne is a de jure officer and, as a result, holds superior title (in fact, the only title) to the office.

THOMAS, J., concurs.