FRED H. DAVIS, AS ATTORNEY GENERAL, EX REL. JOHN S. TAYLOR, *Relator*, v. H. CLAY CRAWFORD, AS SECRETARY OF STATE, *Respondent*.

En Banc.

Opinion Filed March 9, 1928.

*M. A. McMullen* and *W. C. Hodges,* for Relator;

*Fred H. Davis,* Attorney General, for Respondent.

BROWN, J.—The law does not give the Secretary of State any power or authority to inquire into or pass upon the eligibility of a candidate to hold office for the nomination for which he is running. It merely provides that the candidate shall file the sworn statement in the form provided by statute, together with his receipt for the committee assessment, with the Secretary of State, and pay his filing fee to that officer, not less than thirty days previous to the day of the primary election. (Secs. 326-329, Rev. Gen. Stats.) And when he has done this the statute provides that he

shall then be entitled "to have his name printed on the official primary election ballot," (Sec. 331, Rev. Gen. Stats.) No discretion is vested in the Secretary of State. If the simple requirements plainly provided by the statute are complied with by the candidate, as was done here, such State official should, as provided by the statute, receive for filing the sworn statement and receipt, and accept the proper filing fee.

So, on first approach, it would appear that the relator is entitled to the writ of mandamus to require the Secretary of State to accept his filing fee, so that his name may go on the primary election ballot, regardless of whether he is or is not, constitutionally entitled to be elected to the office for which he offers. But just at this point, another principle comes into operation, which requires some examination. In order to maintain the right to the extraordinary writ of mandamus, the relator must show something more than a duty on the part of the respondent. While his statutory duty did not require it, yet the Secretary of State deemed it his duty to refuse to accept such filing fee from the relator on the ground, as set forth in his reply to the alternative writ, that because the relator was a member of the Legislature of 1925 which increased the salary of the office to which the relator aspires, he is, under Section 5 of Article III of the Constitution, ineligible to be elected to that office. If that be true, the relator is not entitled to mandamus, because the issuance of the writ would be nugatory, unavailing, and without benefit to him. To warrant the peremptory writ, it must appear, not only that there is a duty resting upon the respondent, but also that the relator has a clear legal right to enforce the performance of that duty. State *ex rel.* Ellis v. A. C. L. R. Co., 53 Fla. 650, 44 So. 213; 12 Ann. Cases 359; 13 L. R. A., U. S. 320.

It is a well-established fundamental principle of the law

of mandamus that "the writ will never be granted in cases when, if issued, it would preve unavailing, or when compliance with it would be nugatory in its effects, or would be without beneficial results and fruitless to the relator." This is the language of Mr. Justice TAYLOR, and the holding of this Court, in State *ex rel.* Kehoe v. McRae, 49 Fla. 389, 38 So. 605, citing State *ex rel.* Vereen v. Commissioners, 27 Fla. 438, 8 So. 749; 13 Encyc. Pldg. & Prac. 493. See also Pennock v. State, 61 Fla. 383, 54 So. 1004; State v. Crawford, 72 Fla. 254, 73 So. 588; State v. Crawford, 90 Fla. 264, 105 So. 446; 38 C. J. 552-3.

It thus appears that we must consider the question whether the issuance of the peremptory writ would be unavailing, nugatory and without beneficial results to the relator, and manifestly the determination of that question, on the record before us, hinges upon the question of the relator's eligibility to be elected to the office for which he seeks to qualify. If in reply to this it should be said that the relator is not here seeking to qualify for the election, but only for the June primary which is to select the nominee of the Democratic party who will offer as the candidate of that party for election to the Governorship in the November election, the answer is twofold. First, the nomination would be futile and fruitless to the nominee if he could not thereafter lawfully be elected. Second, under our statutes, qualification for candidacy for the nomination is an essential step in order to qualify the candidate for the subsequent election. Under Section 326, Rev. Gen. Stats., because of the nature of the oath required to be taken by a candidate in the primary election, the qualifications of a candidate in the primary must be the same as such candidate would have to have in order to be voted on in the general election, so that if a person is ineligible to be elected to an office in the general election he is ineligible to become a candidate in the primary election. In

State *ex rel.* Merri'l v. Gerow, 79 Fla. 804, 85 So. 144, it was held that: "Primary election laws and laws governing general elections are so interwoven that together they comprise the election machinery of the State, and the rights, duties, privileges and powers granted or imposed by one are equivalent to those granted or imposed by the other in so far as the processes of the courts may be invoked to enforce or protect them." The statutory requirement that a candidate shall make oath "that he is qualified under the Constitution and laws of Florida to hold the office for which he desires to be nominated," has reference to qualifications applicable when elected and the term of office begins. S'ate *ex rel.* v. Haskill, 72 Fla. 176.

Coming then, as "we must, to the question of the relator's eligibility *vel non* to be elected to the office of Governor, this obviously depends upon the cons+ruction which should be placed upon Section 5 of Article III of the Constitution, the language of which is:

"No Senator or Member of the House of Representatives shall, during the time for which he was elected, be appointed or elected to any civil office under the Constitution of this State, that has been crea'ed, or the emoluments whereof shall have been increased, during such time."

It appears from the pleadings that the relator, Senator Taylor, was elected as a Senator on November 4th, 1924, and that the legislature of 1925, of which he was a member, provided for an increase in the Governor's sa'ary. He seeks to qualify as a candidate for the nomination as the Democratic party's candidate for Governor in the primary election to be held on June 5th, 1928, so that, if nominated, he may be qualified as the party's nominee for the Governorship in the general election to be held on November 6th, 1928.

Under the constitutional provision, he cannot be elected to the office of Governor during the time or term for which

he was elected Senator. Section 2 of Article VII of the Constitution provides that members of the Senate "shall be elected for terms of four years." If this means calendar years, then the relator's term as Senator would expire four years from November 4th, 1924, that is, on November 4th, 1928, two days before the general election, and thus he would undoubtedly be eligible to be elected as Governor on November 6th, 1928. If it means legislative years, the time for which he was elected Senator would expire at the general election on November 6th, 1928. If he could not be said to have been elected Governor until the last ballot is cast in such general election, then instantly upon the casting of such last ballot his term as Senator, on this basis, would have expired. So, it would appear that on the basis of legislative years the end of his term as Senator would expire at the instant of his election as Governor. Thus he would not be elected as Governor during the term to which he had been e'ected as Senator. If his election as Governor takes place immediately at the end of his term as Senator, how could it be said that he was elected Governor during his term as Senator? One begins as the other ends. Surely it was not the intention of the Constitution to disqualify a candidate merely because this ending and beginning should occur at practically the same instant of time. It would thus appear that, looked at from either viewpoint, the relator is eligible under the Constitution to be qualified as a candidate for nomination to the office of Governor, and that the peremptory writ of mandamus should issue as prayed for by him. If eligible the relator is certainly entitled to the writ, for he has no other adequate remedy.

The provision of Section 2, Article VII of the State Constitution that "the members of the Senate shall be elected for terms of four years," should be interpreted in connection with the provisions of Sections 1 and 2, Article VII,

that the terms of Senators "shall expire at the election for Senators," and "shall expire on the first Tuesday after the first Monday in November" when an "election for Senators" is held. When so considered the "terms of four years" for Senators begin *on* the day of their election for four years and expire *on* the day of the "election for Senators" four years thereafter.

The first Tuesday after the first Monday in November is the general election day fixed by the Constitution, and such day does not come on the same day of the month every year. Four calendar years from a general election day would sometimes end before the corresponding election day and at other times after the election day, which if controlling would cause in the one case an interregnum and in the other an overlapping of terms that are intended to be successive and continuous. Necessarily the "terms of four years" are not intended to be for four calendar years, but the intent of the original provision is that such terms shall begin on the election day and shall end on the election day four years thereafter.

Section 2, Article IV, provides that the Governor "shall hold his office for four years from the time of his installation," the first election to be in 1888, and that "the term of office of the Governor then elected shall begin on the first Tuesday after the first Monday in January after his election." Under these provisions each succeeding Governor is installed on the first Tuesday after the first Monday in January after his election, even though the term of the preceding Governor is thereby made several days more or less than "four years from the time of this installation." The same is true of the administrative officers of the executive department under Sections 20 and 28, Article IV, and of county officers under Section 14 of Article XVIII.

Under Sections 1 and 2 of Article VII of the State Con-

stitution the term of office of a State Senator elected for four years at the general election held "on the first Tuesday after the first Monday in November" 1924, expires "at the election for Senators" to be held "cn the first Tuesday after the first Monday in November" 1928; therefor "the time for which he was elected" is from his election on the day of the general election in November, 1924, to the election of a successor on the day of the general election in 1928. Of course the term of his successor must begin at the same time the present term expires. If the term of the successor begins at his election at the close of the polls or at any other hour on the day of the election, the term of the present Senator ends at the same instant, consequently the election in 1928 is not within the meaning of Section 5, Article III of the Constitution, "during the time for which he was elected," but at the end of such time; and the Senator who was elected in 1924 for four years may at the general election in 1928 be elected to a civil office created or the emoluments of which had been increased during the four years, without violating Section 5, of Article III of the Constitution. If a State Senator is elected to another office at the same time that his term as Senator expires, such election would be at the end of his term and not "during the time for which he was elected" Senator within the meaning and intent of Section 5, Article III of the Constitution. Any other interpretation would make a Senator elected for four years ineligible to election to a civil office which has been created or the emoluments thereof increased during his term, not only "during the time for which he was elected" as Senator, as stated in the Constitution, but also for at least two years thereafter, which clearly is not the intent of the organic provision. In this State general elections are held only every two years; and the special elections of officers are held only to fill vacancies in the office of Congressman or

members of the legislature, or when there has been no choice of an officer who should have been elected at a general election. See Sec. 219, Rev. Gen. Stats.

Ordered that the peremptory writ of mandamus be issued in accordance with the prayer of relator's petition.

WHITFIELD, TERRELL AND STRUM, J. J., concur.

ELLIS, C. J., AND BUFORD, J., file a separate opinion.

ELLIS, C. J.—John S. Taylor applied for and obtained an alternative writ of mandamus against H. Clay Crawford, as Secretary of State, to require the latter to accept from Taylor the filing fee provided by Section 328, Revised General Statutes, to be paid by one who desires his name to be placed upon the party ballot to be used at the primary election of June, 1928, as a Democratic candidate for nomination by his party for Governor of the State of Florida.

The Secretary of State answered that Taylor was duly elected at the general election of 1924, which was held November 4th in that year, to the office of State Senator for Senatorial District No. 11 of the State of Florida and that the legislature at the general session of 1925 increased the emoluments of the office of Governor of the State of Florida by increasing the salary of that office from six thousand dollars per annum to nine thousand dollars per annum, and that in consequence of those facts Taylor is ineligible to election to the office of Governor at the general election to be held on November 6th in the present year of 1928, because the Constitution by Section 5 of Article III prohibits the election or appointment of any Senator or Member of the House of Representatives during the time for which he was elected to any civil office under the Constitution of this State that has been created or the

emoluments whereof shall have been increased during such time.

The office of Governor of the State of Florida is a civil office under the Constitution of Florida. Section 1, Article IV, Constitution.

The emoluments of the office of Governor were increased by the legislature of 1925. Chapter 11335, Laws of Florida.

John S. Taylor was elected State Senator, November 4, 1924, to hold office for four years. Article VII, Section 2, Constitution, as amended in 1896.

We cannot pass over the question obviously suggested by the alternative writ and the answer: whether the Secretary of State has any discretion in the matter of accepting filing fees tendered under the provisions of the primary election laws of this State, particularly Section 328, Revised General Statutes, by persons who desire to become candidates before the primary election and may in the exercise of such discretion decline such fees when tendered by a person whom he deems ineligible to election to the particular office for which the applicant declares himself to be a candidate.

In other words, may the Secretary of State lawfully refuse to accept from a candidate for nomination to a civil office the statutory "filing fee" required by Section 328, Revised General Statutes, upon the ground that the Secretary is of the opinion that such candidate in the event of his nomination cannot lawfully be elected to the office he seeks at the general election to be held in November following the primary election?

If the Secretary is vested by law with any such discretion mandamus will not lie to compel him to exercise it in any certain way. If he has no such discretion mandamus will lie to compel the mere ministerial duty of accepting the fee tendered, and the question of eligibility of the can-

didate would rest until tested by *quo warranto* proceedings instituted by the candidate of some other political party for the same office who might be voted for in the general election.

In the case of State *ex rel.* A. C. L. R. R. Co. v. The Board of Equalizers, reported in the 84 Florida 592, 94 South. Rep. 681, this Court said that the right to declare an Act unconstitutional is purely a judicial power and cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution.

While the situation presented in the instant case is not identical with that presented in the above case yet by a parity of reasoning the principle may be applicable, because if the petitioner is constitutionally ineligible to election to the office he seeks the statute which requires the Secretary of State to receive the filing fee from the petitioner and thereby qualify him to become a candidate for nomination by a political party to an office to which he is ineligible to be elected may be regarded as invalid in so far as it tentatively recognizes the eligibility of such ineligible candidate to election at the general election.

There are difficulties, however, in the way of that theory because the Act does not expressly or impliedly declare a constitutionally ineligible candidate for office to be eligible to election to the office he seeks at the general election. It merely permits any person who is qualified to hold office and who has paid his poll taxes legally due and the assessment levied against him by the State or County Executive Committee for the office he seeks and who has not violated the laws of the State relating to elections or the registration of voters, to be a candidate for nomination by his party to the office. The political party in whose primary such a person becomes a candidate for the party nomination may not by its choice in such pri-

mary election select him as its nominee, so the question could not be presented. In such case it would not arise. Therefore, the exercise of the so-called discretion or judgment by the Secretary of State is premature and wholly anticipatory, to say nothing of the fact that to exercise such discretion he must go outside the record and adjudicate a legal right of the petitioner under the Constitution and laws of his State.

Now, if the Secretary of State is vested with any such power, judgment or discretion under the law, his duty is not ministerial purely and mandamus will not lie to control his discretion in a certain way contrary to his judgment. If it would lie to control his action in a certain way the mandamus itself would be a denial that he possessed any such discretion or power. See Towles v. State, 3 Fla. 202; Gamble v. State, 61 Fla. 233, 54 South. Rep. 370; State ex rel. Lilienthal v. Deane, 23 Fla. 121, 1 South. Rep. 698; State ex rel. Moody v. Barnes, 25 Fla. 298, 5 South. Rep. 722; State ex rel. Kennerly v. Amos, 78 Fla. 552, 83 South. Rep. 393.

If, on the contrary, the Secretary of State is vested under the law with no such discretion then it is obviously his purely ministerial duty to accept the fee tendered by the petitioner and leave the merits of the case to be judicially determined in an appropriate proceeding, if the occasion should ever be presented, after the general election.

To determine in this proceeding the eligibility of the petitioner to election to the office of Governor of this State at the next general election to be held in November of the present year would be a fruitless, unnecessary and vain thing to do because it would in no wise be binding upon the nominee of some other political party in the same general election for the same office who would, in the event of the petitioner's nomination and participation in the next general election and receipt by him of the greater

number of votes cast in such election for such office, have
the legal right in an appropriate case to test the petition-
er's eligibility to election and his right under the Consti-
tution to occupy the office of Governor of the State.

The determination of such question in this proceeding,
therefore, would be effective only to determine the peti-
tioner's present right to be a candidate for the Democratic
nomination to the office he seeks at the hands of the people
and to that end pay the statutory "filing fee" to the Sec-
retary of State. Further than that whatever this Court
may say upon the question sought to be presented would
amount to nothing more than legal advice to the petition-
er's campaign committee. It would not be binding upon
the Court, it could not be classed as *stare decisis,* nor in
any sense *res adjudicata.* It would be *dictum* pure and
simple, a mere legal opinion of the members of this Court
to the petitioner and his campaign managers and party in
the event of his selection in the primary as the party's
nominee.

We are of the opinion that it is the ministerial duty only
of the Secretary of State under the answer to the alterna-
tive writ to accept the filing fee tendered by the petitioner
and execute a receipt therefor.

A peremptory writ is ordered.

BUFORD, J., concurs.

BUFORD, J. (dissenting) :

After mature consideration, I find that I am unable to
fully agree with the majority opinion. I fully agree with
the views expressed by Mr. Chief Justice ELLIS.

I can follow the majority opinion down to and through
the sixth paragraph, but no further. I can concur in the
judgment which is proposed by Mr. Chief Justice ELLIS,
though it is made by the majority opinion to appear to vio-

late that principle that ''in order to maintain the right to the extraordinary writ of mandamus, the relator must show something more than a duty on the part of the respondent.'' And that relator must also show that he has the legal right to demand performance of that duty by the respondent, and also ''the writ will never be granted in cases when if issued it would prove unavailing or when in compliance with it would be nugatory in its effects, or would be without beneficial results and fruitless to the relator.''

Conceding that these principles appy to this case; the question involved is one of party politics and should be determined by the exercise of the lawful discretion of the party officials. The party officials are the members composing the party executive committee. The relator shows that he has been accepted as a candidate for nomination by the party executive committee and has then done that which the statute requires to procure the performance of the physical act of having his name placed on the party ballot. He thereby has brought himself within the purview of the above stated principles.

A statement in any opinion in this case that the relator is eligible for election at the next general election to the office of Governor would (in the event the relator should receive the high vote in the general election), as has been stated by Mr. Chief Justice ELLIS, not be binding upon the candidate of any other party in that election who might come into this Court to contest the validity of the election of the relator on account of his ineligibility because of the ground sought to be presented and attempted to be adjudicated in this case. But, if his eligibility for election in the ensuing general election was a question for determination here I could not then follow the conclusions reached by the majority opinion.

Reverting to the question of the relator's eligibility *vel non* to be elected to the office of Governor, as is stated by Mr. Justice Brown in the majority opinion, "this obviously depends upon the construction which should be placed upon Section 5 of Article III of the Constitution, the language of which is:

"No Senator or Member of the House of Representatives shall, during the time for which he was elected, be appointed or elected to any civil office under the Constitution of this State, that has been created or the emoluments whereof shall have been increased, during such time."

"It appears from the pleadings that the relator, Senator Taylor, was elected as a Senator on November 4th, 1924, and that the Legislature of 1925, of which he was a member, provided for an increase in the Governor's salary. He seeks to qualify as a candidate for the nomination as the Democratic party's candidate for Governor in the primary election to be held on June 5th, 1928, so that, if nominated, he may be qualified as the party's nominee for the Governorship in the general election to be held on November 6th, 1928."

If we look for the purpose and result sought to be accomplished by the foregoing quoted provision of our Constitution, we must first concede that the language was written in the Constitution with some particular and definite salutary end in view and it appears inescapable that the only purpose for which this language was written into our Constitution was to prevent existence of the temptation to vote for and encourage the creation of an office or for the increase of the emoluments of an office for one's own personal benefit and gain.

It is a matter of common knowledge of which this Court may well take judicial cognizance, that candidates for the State offices are usually developed and often begin their

campaigns during the regular sessions of the Legislature. These sessions of the Legislature do not occur in election years. They occur in the odd numbered years.

It appears to me inescapable that the Constitution, having provided for the appointment by the Governor of some State officers and having provided that all others should be elected, and having also provided that in case of vacancy in elective offices the Governor shall appoint incumbents only to the next general election, had the provision here under consideration embraced therein, with the purpose and intent that its inhibitions should apply to general elections occurring at the close of the term of office for which Senators and/or Members of the House of Representatives were elected. It appears to me that any other construction would mean to say that insofar as elections are concerned, this provision of the Constitution never applies to any member of the House of Representatives and only applies to one-half of the membership of the Senate for one period of two years and to the other one-half of that membership for the next period of two years.

The construction placed upon this provision of the Constitution by the majority opinion means that members of the Legislature may without violating the Constitution vote to create offices and to increase the emoluments of offices for the purpose of immediately then and there beginning a campaign, and carry it through, to acquire that office which they have so created, or the emoluments of which they have so raised, and themselves immediately reap the benefits of their legislative action.

It appears to me that the framers of the Constitution intended that this inhibition should reach to and cover elections occurring at the next general election at which successors of Senators and/or Representatives should occur after the creation of an office or the increasing of emolu-

ments of an office occurs and that, therefore, the relator in this case is not eligible for election to the office of Governor at the general election in 1928.

Aside from this view, I entertain the further view that the election of a Governor will occur at the general election in 1928 and that election will occur within the term or within the time for which the relator was elected as Senator and during which term at the regular session of the Legislature of 1925 the emoluments of the office of Governor were increased. The term of office of the relator will not end until the general election of 1928 shall have been completely held. That election will be held on Tuesday, the 6th day of November. If the Governor should call an extraordinary session of the Legislature to be convened at Tallahassee, the capital, on Thursday, the 1st day of November, and such extraordinary session of the Legislature should remain in session for a period of ten days, the relator would unquestionably be entitled to occupy his seat in the State Senate and to function in his office as a State Senator during the entire day of Tuesday, the 6th day of November, and during that day the election would be held and consummated, resulting in his election to the office of Governor (if he should receive the requisite number of votes). It certainly could not be said that that election occurred after the expiration of his term. If this provision of the Constitution is to be given any force and effect, if it is to accomplish that good purpose for which it was evidently intended, it appears to me that this construction must be placed upon its language. Believing that this is the proper and logical construction to be given this provision of the Constitution, it is my view that the relator, both according to the spirit and the letter of the Constitution, is ineligible for election to the office of Governor at the next general election to be held November 6th, 1928,

but, as hereinbefore stated, the respondent is not clothed with the power or authority to determine his eligibility for election and the party executive committee, having by its official action accepted him as a candidate for the party nomination, it is not within the province of the courts to say that the party shall not have him as a candidate. As to whom any political party will accept as its candidate for office is a purely political question which courts should not assume to adjudicate; but when an election shall have been held and it happens that a candidate ineligible for election has apparently received the high vote, the opposing candidate in that election may then appeal to the courts to determine which of the two is eligible and shall have been lawfully elected to hold the office. Therefore, I maintain that the question of the eligibility of the relator for election to the office of Governor at a general election to be held on November 6th, 1928, was not one which the Secretary of State can assume to determine and that, therefore, that question is not involved in the determination of this suit. That the relator having been accepted by the proper party officials as a party candidate, and having produced before the Secretary of State proof of such acceptance, he was thereupon entitled to have the Secretary of State receive his fee and place his name on the official ballot.

The peremptory writ should issue.