# Supreme Court of Florida

―――――――

No. SC2025-0162

―――――――

**DEBBIE MAYFIELD,**
Petitioner,

vs.

**SECRETARY, FLORIDA DEPARTMENT OF STATE, et al.,**
Respondents.

February 13, 2025

GROSSHANS, J.

This election case stems from a dispute that arose when Respondents—the Secretary of State and Director of the Division of Elections (collectively "Secretary")—refused to place Petitioner Deborah Mayfield on the special election ballot for a senate seat in Brevard County. That refusal was based on the Secretary's interpretation of a constitutional provision creating term limits for certain elective offices, including state senator. Arguing that the Secretary misapprehended his authority and failed to properly fulfill his statutory duty, Mayfield asks us to issue writs of mandamus

and quo warranto. For the reasons given below, we grant Mayfield's petition for mandamus relief.[1]

I

Mayfield was first elected to the Florida House of Representatives in 2008 and served in that office for eight years. Following that, she was elected to the Florida Senate, serving in Senate District 17 for six years and Senate District 19 (SD 19) for two. Her most recent term ended in November 2024.

At the completion of her Senate term, she ran for and won election to the Florida House of Representatives. She was sworn in on November 19, 2024, as the representative from District 32. Early into that term, Mayfield learned that Senator Randy Fine—the new holder of SD 19—would be resigning to run for federal office.

On January 21, 2025, the Governor issued an executive order, calling for a special election in SD 19. Under that order, the special election primary is set for April 1, 2025, with the general election to take place on June 10, 2025. Days after the executive order issued, Mayfield completed and submitted the appropriate paperwork to

---

1. We have jurisdiction. *See* art. V, § 3(b)(8), Fla. Const.

- 2 -

qualify as a candidate—doing so before the deadline set by the Secretary's notice.[2]  This paperwork included a completed oath of office, a filing fee in the form of a check, and certain notarized forms.

On February 5, the Department of State's Director of the Division of Elections informed Mayfield that she did not qualify for placement on the ballot.  As the sole reason given for Mayfield's disqualification, the notice stated, "Upon review and consultation with counsel regarding your candidacy for state senate district 19, the Division of Elections has determined that your name cannot appear on the special election ballot, as it violates article VI, section 4 of the Florida Constitution."  The next day, Mayfield filed the petition at issue in this case.

II

Florida's constitution gives this Court the authority to issue writs of quo warranto and mandamus, *see* art. V, § 3(b)(8), Fla.

---

2.  *See* § 99.061(7), Fla. Stat. (2024) (listing required items for qualification); § 101.252, Fla. Stat. (2024) (describing right to appear on ballot as "entitlement" if candidate is qualified); § 100.141, Fla. Stat. (2024) (requiring issuance of order and notice of special election).

Const.—both being "extraordinary" writs that have common law roots. *See Richardson v. Sec'y, Fla. Agency for Health Care Admin.*, 395 So. 3d 500, 504 (Fla. 2024) ("In its earliest applications, we described the writ as narrow and limited by its common law roots."); *State ex rel. Buckwalter v. City of Lakeland*, 150 So. 508, 511 (Fla. 1933) ("A writ of mandamus is a common-law writ used to coerce the performance of any and all official duties where the official charged by law with the performance of such duty refused or failed to perform the same . . . ."); *Vassar v. State ex rel. Gleason*, 190 So. 434, 435 (Fla. 1939) (noting "common law" origin).

Mandamus is a discretionary writ that offers relief only in narrow circumstances. The limited scope of this writ is reflected in the demanding standard governing its issuance. In describing that standard, we have said that "the petitioner must have a clear legal right to the requested relief, the respondent must have an indisputable legal duty to perform the requested action, and the petitioner must have no other adequate remedy available." *Pleus v. Crist*, 14 So. 3d 941, 945 (Fla. 2009) (quoting *Huffman v. State*, 813 So. 2d 10, 11 (Fla. 2000)); *see also State ex rel. Knott v. Haskell*, 72 So. 651, 659 (Fla. 1916) ("The writ of mandamus is granted by the

courts to enforce the performance of a ministerial duty imposed by law where such duty has not been performed as the law requires. Such writ issues only when the law affords no other adequate remedy; and where the writ is applicable it should be framed so as to meet the exigencies of the case.").

### A

With this backdrop, we now consider whether there are legal rights and duties sufficient to support a writ of mandamus in this case. Contained in chapters 97 through 106, Florida's election code establishes a comprehensive body of law on the topic of elections, including rules regulating candidate qualification.

In the chapter governing candidates, the applicable language defines the term "qualify" as "to fulfill the requirements set forth in s. 99.061(7)(a)." § 99.012(1)(b), Fla. Stat. (2024). Section 99.061(7)(a), in turn, lists the specific items that must be submitted to a filing officer within the qualifying period "[i]n order for a candidate to be qualified."[3] This list consists of proper payment of

---

3. The filing officer may be with the Department of State, or a local supervisor of elections office for certain elected county positions. *See, e.g.,* § 106.07(2)(a)(1.), Fla. Stat. (2024);

- 5 -

the filing fee, the candidate's oath, a written statement of party affiliation, a form specifying the campaign treasurer and campaign depository, and a statement of financial interest. § 99.061(7)(a). Once the paperwork has been submitted, the filing officer carries out a narrow review function. *See* § 99.061(7)(c). The statute specifically circumscribes the responsibilities of the filing officer as follows:

> The filing officer performs a ministerial function in reviewing qualifying papers. In determining whether a candidate is qualified, the filing officer shall review the qualifying papers to determine whether all items required by paragraph (a) have been properly filed and whether each item is complete on its face, including whether items that must be verified have been properly verified pursuant to s. 92.525(1)(a). The filing officer may not determine whether the contents of the qualifying papers are accurate.

*Id.*

If the papers are incomplete, it is the obligation of the filing officer to make a reasonable effort to apprise the candidate "of the missing or incomplete items" and also "inform" the candidate of the filing deadline. § 99.061(7)(b). No other requirements for

---

§ 106.0702(2)(a), Fla. Stat. (2024); § 106.0703(1)(e), Fla. Stat. (2024).

- 6 -

qualification are listed in section 99.061(7)(a), and no other tasks are assigned to the filing officer with respect to review of the qualifying papers.[4]

Notably, once the candidate qualifies under this statute, the Department of State "shall certify to the supervisor of elections, within 7 days after the closing date for qualifying, the names of all duly qualified candidates for nomination or election." § 99.061(6). Finally, section 101.252(1) ties a candidate's right to appear on the ballot with that candidate's qualification. Specifically, the statute says that "[a]ny candidate for nomination who has qualified as prescribed by law is entitled to have his or her name printed on the official primary election ballot." § 101.252(1). And the right to appear on the general ballot, in turn, depends on the result of the primary. § 101.2512.

Considering these statutes collectively, we conclude that a candidate for elective state office who timely submits the paperwork required by section 99.061(7)(a) has met the statutory requirements

---

4. The Secretary does not cite any other statute governing qualification.

- 7 -

for qualification and has a clear legal right to appear on the primary ballot.

## B

Nevertheless, for mandamus relief, it is not enough for a petitioner to simply establish a legal right. A petition must also show that the respondent has an indisputable legal duty to perform the requested action. Thus, we must consider whether the Secretary has a ministerial obligation to place a candidate on the ballot who has met the qualifying standards required by statute. The answer is a straightforward yes.

Pursuant to statute, the filing officer reviews the paperwork, and that review is a "ministerial function." § 99.061(7)(c). As discussed earlier, that function is limited to assessing whether the required items have been properly and timely filed and whether each item is facially complete. Indeed, "in determining whether a candidate is qualified," the filing officer "may not determine whether the contents of the qualifying papers are accurate." *Id.* Further, the Department is required to submit the names of those qualified—pursuant to section 99.061(7)(a)—to the supervisor of elections. § 99.061(6). These provisions operate in concert, creating a legal

- 8 -

duty to perform tasks that are expressly ministerial in nature, and which do not involve the exercise of judgment, factfinding, or discretion. We have traditionally held such duties to be enforceable by writ of mandamus.

Nearly a century ago, we found that comparable statutes did not afford the Secretary discretion in determining whether a candidate was eligible to be placed on the ballot. *Davis ex rel. Taylor v. Crawford*, 116 So. 41, 42-43 (Fla. 1928). In granting mandamus relief, we said:

> The law does not give the secretary of state any power or authority to inquire into or pass upon the eligibility of a candidate to hold office for the nomination for which he is running. It merely provides that the candidate shall file the sworn statement in the form provided by statute . . . . And, when he has done this, the statute provides that he shall then be entitled to have his name printed on the official primary election ballot. No discretion is vested in the secretary of state. If the simple requirements plainly provided by the statute are complied with by the candidate, as was done here, such state official should, as provided by the statute, receive for filing the sworn statement and receipt, and accept the proper filing fee.

*Id.* at 42 (internal quotation marks and citations omitted).[5]

---

5. *See also Haskell*, 72 So. at 659 ("The rights of a candidate which arise under and are created by the primary election laws of the state of Florida are such that when violated the courts of this

Consistent with that precedent, we find that the Department of State has an indisputable legal duty (ministerial in nature) to notify the supervisor of elections of all candidates that have qualified pursuant to statute. And a duly qualified candidate has a right to be placed on the ballot.

C

Turning to the facts of this case, Mayfield submitted the notarized paperwork and payment called for by statute. Indeed, there is no claim that a form was missing or incomplete, nor was she notified that her paperwork was deficient in any way. Furthermore, the record shows that the paperwork and payment were submitted prior to the Secretary's filing deadline.

At this point, with the facial sufficiency of the paperwork established, the Department of State's review should have ceased. But the Department looked further.

---

state may be resorted to for their enforcement, and the writ of mandamus may be used to compel the performance of the duties which are imposed by law . . . such duties being ministerial in their nature involving no discretion.").

- 10 -

To defend this expanded review, the Secretary argues that his office may go beyond the face of the paperwork to assess whether a candidate is legally and constitutionally eligible for the office.[6] We have not found, nor has the Secretary cited, any source of law that grants the Secretary this authority.[7] Instead, we find the opposite— a statute that expressly limits the Department's scope of review. In light of these facts, we cannot accept the Secretary's contention that he, in fact, has discretion to exercise independent judgment as to a candidate's constitutional eligibility for office as part of the qualifying review process.

The Secretary also argues that the ability to verify the oath of the candidate necessarily encompasses the ability to determine if that candidate is truly eligible for the office. He is wrong. It is clear to us that the relevant provision merely authorizes the Secretary to

---

6. As an example, the Secretary argues that the filing officer could consider a legal memorandum that Mayfield included with her paperwork.

7. We reject the Secretary's conclusory assertion that his obligation to "maintain uniformity in the interpretation and implementation of the election laws" pursuant to section 97.102, Florida Statutes (2024), permits him to go beyond the clear mandate to perform a ministerial function in the context of qualification.

determine if the *form* of the candidate's oath complies with statutory requirements. We know this because the statute characterizes review of the candidate's oath as one for facial completeness and expressly forbids an assessment of whether the contents "are accurate." *See* § 99.061(7)(c). Moreover, the filing officer's responsibility for verification (referred to in section 99.061(7)(c)) specifically directs to a statute that governs only the manner of verification. *See* § 92.525(1)(a).

D

Finally, to grant mandamus relief, we must determine there is no other adequate remedy at law. On the unique circumstances presented by this case, we conclude there is not. In so concluding we emphasize several facts. One, based on the scheduling of the special election, the time to issue the primary ballot is fast approaching. The Governor and Secretary set the primary election for April 1, 2025, and the deadline for shipping ballots to military and overseas voters is Friday, February 14. *See* § 101.62(3), Fla. Stat. (2024). Two, Mayfield's conduct did not create this timing issue. And three, the Secretary's decision has the effect of preventing the Republican electors of SD 19 from selecting the

- 12 -

candidate of their choice from among those duly qualified to be placed on the primary ballot.[8]

## III

The Secretary presents a myriad of other reasons why the Court should not grant Mayfield's petition. None have merit.

One such argument is that Mayfield's failure to seek declaratory relief or an advisory opinion warrants dismissal, and that closeness to the election also supports dismissal due to the hardships faced by election officials as a result of last-minute changes to the ballot.

We reject these arguments as being inconsistent with the principles of equity that bear upon our discretion to issue extraordinary writs. *See State ex rel. Perkins v. Lee,* 194 So. 315, 317 (Fla. 1940) ("While mandamus is classed as a legal remedy, it is a remedial process, which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion and upon equitable

---

8. Finally, we note that the Secretary's argument—that a lower court proceeding would allow a fuller record with the benefit of factual development—directly contradicts his assertion that the issue to be decided is clear on the face of the record.

principles."); *see also State ex rel. Haft v. Adams*, 238 So. 2d 843, 844 (Fla. 1970).

Here, Mayfield timely filed her paperwork and sought relief just one day after the Secretary notified her of his decision to keep her off the ballot. Mayfield's conduct, coupled with timing restraints imposed by the executive order, tip the equities in favor of relief. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-80 (2004) ("The law does not put litigants in the impossible position of having to exhaust alternative remedies before petitioning for mandamus, on the one hand, and having to file the mandamus petition at the earliest possible moment to avoid laches, on the other.").

Relying on his interpretation of the term-limits provision in article VI, section 4, the Secretary also maintains that, in deciding whether to grant relief, we should not overlook Mayfield's alleged constitutional ineligibility. We agree that Mayfield's constitutional eligibility is relevant to whether we should exercise our discretion in granting her petition. *See Whitehouse v. Ill. Cent. R. Co.*, 349 U.S. 366, 373 (1955) ("[M]andamus is itself governed by equitable considerations and is to be granted only in the exercise of sound

- 14 -

discretion."); *Davis*, 116 So. at 43 ("It is a well-established fundamental principle of the law of mandamus that 'the writ will never be granted in cases when, if issued, it would prove unavailing, or when compliance with it would be nugatory in its effects, or would be without beneficial results and fruitless to the relator.'" (quoting *State ex rel. Kehoe v. McRae*, 38 So. 605, 606 (Fla. 1905))); *see also State ex rel. Ostroff v. Pearson*, 61 So. 2d 325, 326 (Fla. 1952); *Joyner v. Fla. House of Representatives*, 163 So. 3d 503, 503 (Fla. 2015). However, we reject the Secretary's interpretation of the governing constitutional provision.

Our approach to interpreting the constitution reflects a commitment to the supremacy-of-text principle, "recognizing that the words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Planned Parenthood of Sw. & Cent. Fla. v. State*, 384 So. 3d 67, 77 (Fla. 2024) (cleaned up); *see also City of Tallahassee v. Fla. Police Benevolent Ass'n, Inc.*, 375 So. 3d 178, 183 (Fla. 2023) ("[W]ords must be read and interpreted in their context, not in isolation." (quoting *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022))); *Advisory Opinion to Governor re Implementation of Amend. 4, The*

- 15 -

*Voting Restoration Amend.*, 288 So. 3d 1070, 1079 (Fla. 2020) (a provision's meaning "must be drawn from the context in which it is used").

Article VI, section 4 states in part:

(c) No person may appear on the ballot for re-election to any of the following offices:
    (1) Florida representative,
    (2) Florida senator,
    (3) Florida Lieutenant governor,
    (4) any office of the Florida cabinet,
    (5) U.S. Representative from Florida, or
    (6) U.S. Senator from Florida
if, by the end of the current term of office, the person will have served (or, but for resignation, would have served) in that office for eight consecutive years.

The Secretary's reading of the text severs the phrase "consecutive years" from the rest of the provision, leading him to conclude that, if successful in the upcoming election, Mayfield "will have served" in SD 19 for twelve consecutive years. This interpretation fails to consider the words in context. *See Lab'y Corp. of Am. v. Davis*, 339 So. 3d 318, 324 (Fla. 2022).

Our analysis of the various terms and phrases in this provision must consider the text as an integrated whole. Several factors stand out. First, the text refers to the "current term," inviting the reader to analyze the term of office that the potential

- 16 -

candidate currently holds, rather than looking back to an office the potential candidate once held. If "that office" is the one to which the potential candidate seeks election, then the text forbids the potential candidate from doing so if he or she (but for resignation) will have served in that office for "eight consecutive years" at the end of the current term.

In context, we also conclude that "consecutive years" describes unbroken periods of service in office, rather than any part of sequential calendar years as suggested by the Secretary. And the operation of these phrases together also sheds light on the meaning of "re-election" in this context. The term refers to the re-election of an incumbent who holds "that office" for the "current term."

Our conclusion is consistent with how an ordinary person would understand the statute's text. Elected officials serve a term, a fixed and continuous period of time, in a specified office. In this context, a reasonable and informed reader would not understand the concept of "consecutive years" of service to include periods (other than those caused by resignation) during which the potential candidate did not hold the specified office at all.

Contrary to the Secretary's position, even if Mayfield returns to the Senate, she would not have served as a senator for more than eight consecutive years, for purposes of article VI, section 4. Mayfield experienced a break in service when her senate term ended in November 2024. The conclusion of that term, after which Mayfield left the office of senator, brought an end to a period of "consecutive" years of service. And if Mayfield were to win election to SD 19 in the upcoming special election, that will restart the clock on the calculation of her "consecutive" years of service for purposes of article VI, section 4(c).[9]

If the people of Florida want other limitations on the time their elected officials may serve, they can incorporate such language explicitly through the constitutional amendment process. However, until they choose to do so, we cannot read a prohibition into the constitution that does not exist because of policy concerns over

---

9. We note that the language of the provision "or, but for resignation, would have served," bolsters our reading that this applies to those currently holding the office they wish to seek by re-election. Art. V, § 4(c). A current office holder is precluded from resigning early from his or her position simply to seek re-election for the same office. Again, that is not the factual scenario we have here.

gamesmanship. Floridians are entitled to vote for the candidate of their choice that has qualified for the office pursuant to constitutional and statutory requirements, as Mayfield has done in this case.

IV

For the reasons given above, we grant the petition for mandamus but withhold the writ confident that the Secretary will promptly comply with this opinion no later than 3:00 p.m. on Friday, February 14. We deny the petition for quo warranto as moot.

No motion for rehearing will be considered by this Court.

It is so ordered.

MUÑIZ, C.J., and LABARGA, COURIEL, and SASSO, JJ., concur.
CANADY, J., concurs specially with an opinion, in which LABARGA, J., concurs.
FRANCIS, J., concurs with an opinion.

CANADY, J., concurring specially.

I agree with the majority's conclusion that the Secretary failed to carry out his clear ministerial duty and that article VI, section 4 of the Florida Constitution ("section 4") does not bar Representative Mayfield from placement on the ballot for the Senate District 19

- 19 -

special election. I write separately to express the view that this case presents circumstances that would justify departure from our standard practice in similar writ proceedings of assuming that compliance will be forthcoming and therefore withholding issuance of the writ.

Here, two circumstances support immediate issuance of the writ of mandamus compelling immediate compliance. First, this case has come to us because the Secretary has—without any plausible legal basis—taken action that threatens to disrupt the orderly and fair administration of the special election for Senate District 19. Second, time is of the essence.

As the majority explains, in determining a candidate's qualification under section 99.061(7)(c), Florida Statutes (2024), the Secretary "performs a ministerial function." Majority op. at 6 (quoting § 99.061(7)(c), Fla. Stat.). The statute makes clear beyond any doubt that the ministerial function involves determining only whether the items required to be filed in connection with qualifying—that is, the qualifying papers—have been "properly filed" and "whether each item is complete on its face." § 99.061(7)(c), Fla. Stat. Determining the facial completeness and proper filing of those

- 20 -

items includes evaluating whether "items that must be verified have been properly verified" by the candidate under oath or affirmation as required by section 92.525(1)(a), Florida Statutes (2024). § 99.061(7)(c), Fla. Stat. The determination of facial completeness and proper filing does not involve an inquiry into the truthfulness of anything in the qualifying papers. The Secretary must determine whether the verification is in proper form but must not determine whether the facts that are sworn to or affirmed in the verification are true.

The statute leaves no doubt about the strictly circumscribed nature of the Secretary's ministerial duty and authority. It provides that the Secretary "**may not determine whether the contents of the qualifying papers are accurate**." *Id.* (emphasis added). What could be more clear? And if the Secretary is not the arbiter of the accuracy of the qualifying papers, he certainly cannot be the arbiter of other facts or legal questions related to the candidacy of a person who has submitted qualifying papers that on their face satisfy the statutory requirements for qualification.

The Secretary gives short shrift to the clear command of the statute, arguing in effect that the Secretary has a "duty" to ignore

- 21 -

the statutory restrictions placed on his role in the qualifying process.  But the Secretary is required to obey the restrictions laid down in the statute.  It is indeed remarkable that the Secretary must be instructed on this elementary legal principle.

Rather than coming to grips with the statute governing the submission and acceptance of qualifying papers, the Secretary submits an argument that distorts what the statute says about verified documents and that turns a blind eye to key portions of the statutory text.  The Secretary—purporting to quote the statute— says that he rejected Representative Mayfield's candidacy because he "could not 'properly verif[y]' the material needed for qualification."  Resp. Br. at 3 (alteration in original) (quoting § 99.061(7)(c), Fla. Stat.).  This unmistakably suggests that the statute authorizes the Secretary to determine the accuracy of the qualifying papers.  But the statute uses the term "verified" in a technical sense denoting documents that are sworn or affirmed with the requisite legal formalities.  And under the statute qualifying documents are thus "verified" by the candidate—not by the Secretary.  In a strikingly disingenuous argument, the Secretary flips the meaning of the term to a different sense in support of an

argument that is directly contradicted by the statutory text. In doing so, the Secretary says not a word acknowledging that the statute expressly prohibits the Secretary from determining "whether the contents of the qualifying papers are accurate." § 99.061(7)(c), Fla. Stat. This is not the sort of argument that any litigant—much less an officer of the state of Florida—should present in any court.

The Secretary's position on the meaning of section 4 is also meritless. As is evident from the majority's analysis, section 4's term limit of eight consecutive years can apply only to a person who seeks to appear on the ballot for reelection to an office that the person currently holds or would currently hold but for resignation. Section 4's identification of "the current term of office" of persons subject to its operation defeats the argument that a person who has left an office (other than by resignation) is subject to the term limits restriction based on previous service in that office. Absent resignation, a person who is no longer in the office for which election is sought has no "current term of office" and thus cannot come within section 4's scope.

The provision therefore contemplates disqualification of a person who—at the time of placement on the ballot—holds the office

sought (or would hold it but for resignation) and who "by the end of the current term of office" "will have served (or, but for resignation, would have served) in that office for eight consecutive years"—that is, for a continuous, uninterrupted eight-year period terminating at the end of the current term. Since Representative Mayfield has no "current term of office" in the Florida Senate, section 4 does not prevent her appearance on the ballot for the Senate District 19 special election. Under the terms of section 4, Representative Mayfield's prior service in the Florida Senate—which concluded in 2024—is irrelevant.

A constitutional provision certainly could be fashioned to impose a lifetime limit on service in a particular office. *See, e.g.*, Amend. XXII, U.S. Const. ("No person shall be elected to the office of the President more than twice, and no person who has held the office of President, or acted as President, for more than two years of a term to which some other person was elected President shall be elected to the office of the President more than once."). Similarly, a constitutional provision could be framed to impose a specific period of ineligibility to seek reelection after service of defined duration in a

particular office has been completed.  But neither sort of provision is in the text adopted by the people of Florida.

LABARGA, J., concurs.

FRANCIS, J., concurring.

I concur fully that Mayfield is entitled to mandamus relief.  But I write separately because I would accept the Secretary's invitation to recede from *Whiley v. Scott*, 79 So. 3d 702 (Fla. 2011), and dismiss the petition for the writ of quo warranto for lack of standing.

Original Proceeding – Quo Warranto & Mandamus

Ricardo A. Reyes, Sacha A. Boegem, and Anthony Quintana of Tobin Reyes PLLC, Boca Raton, Florida,

>   for Petitioner

Frank Mari of Tessitore Mari, PLLC, Lake Mary, Florida,

>   for Respondent Tim Bobanic, in his official capacity as the Supervisor of Elections for Brevard County, Florida

Mohammad O. Jazil, Michael Beato, and Randall M. Raban of Holtzman Vogel Baran Torchinsky & Josefiak PLLC, Tallahassee, Florida; and Bradley R. McVay, Deputy Secretary of State for Legal Affairs and Election Integrity, Joseph S. Van de Bogart, General Counsel, and Ashley Davis, Chief Deputy General Counsel, Florida Department of State, Tallahassee, Florida,

>   for Respondents Cord Byrd, in his official capacity as Florida Secretary of State, and Maria Matthews, in her official capacity as Director of Florida Division of Elections